UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH ANTHONY                          CIVIL ACTION

versus                                  NO. 07-3223

BURL CAIN, WARDEN                       SECTION: "F" (5)


<u>REPORT AND RECOMMENDATION</u>

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus relief of petitioner, Joseph Anthony, the State's responses thereto, and petitioner's rebuttals to those responses. (Rec. docs. 3, 10, 11, 15, 29, 30)  Having determined that an evidentiary hearing is not necessary, it is recommended, for the reasons that follow, that the petition be **DISMISSED WITH PREJUDICE**.

I.  PROCEDURAL HISTORY

On April 20, 2001, petitioner, Joseph Anthony, a prisoner incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was found guilty of aggravated rape.  He was sentenced

to a term of life imprisonment without the benefit of probation, parole, or suspension of sentence.  The Louisiana First Circuit Court of Appeal subsequently affirmed that conviction and sentence. State v. Anthony, No. 2002-KA-0906 (La. App. 1st Cir. Feb. 14, 2003). (St. ct. rec., vol. 9 of 11)  On September 19, 2003, the Louisiana Supreme Court denied petitioner's related writ application.  State v. Anthony, 853 So.2d 637 (La. 2003).

On August 13, 2004, petitioner filed an application for post-conviction relief with the state district court.  (St. ct. rec., vol. 9 of 11)  In connection with that application, petitioner also filed a motion for recusal of the trial court judge.  The recusal motion was denied.  Minute entry dated October 21, 2004; State v. Anthony, No. 2004 KW 2596 (La. App. 1st Cir. Mar. 7, 2005); State ex rel. Anthony v. State, 922 So.2d 1168 (La. 2006).  (St. ct. rec., vol. 9 of 11)

On February 10, 2006, the state district court denied five of the claims asserted in the post-conviction application and ordered the State to respond to the remaining claim.  (St. ct. rec., vol. 9 of 11)  The Louisiana First Circuit Court of Appeal denied petitioner's related writ application challenging that judgment, finding no abuse of discretion.  State v. Anthony, No. 2006 KW 0423 (La. App. 1st Cir. July 10, 2006).  (St. ct. rec.,

vol. 9 of 11)  On May 4, 2007, the Louisiana Supreme Court likewise denied petitioner's related writ application.   *State* *ex* *rel.* *Anthony v. State*, 956 So.2d 602 (La. 2007).

On July 31, 2007, the state district court denied petitioner's remaining post-conviction claim.  (Rec. doc. 6)  The Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court then denied petitioner's related writ applications.  *State v. Anthony*, No. 2007 KW 1779 (La. App. 1st Cir. Dec. 27, 2007)(Rec. doc. 16); *State* *ex* *rel.* *Anthony v. State*, 992 So.2d 1032 (La. 2008) (Rec. doc. 19).

While his final post-conviction claim was still pending in the state courts, petitioner filed the instant action for federal habeas corpus relief on June 6, 2007.  In his federal application, petitioner asserts the following claims:

1.   Petitioner received ineffective assistance of counsel at trial;

2.   Petitioner received ineffective assistance of counsel on appeal;

3.   Petitioner was denied his right to a fair and impartial jury by the trial judge's denial of defense counsel's challenges for cause of three prospective jurors;

4.   The trial judge was biased;

- 3 -

5.     The prosecution engaged in misconduct;

6.     Petitioner has newly discovered evidence establishing his innocence;

7.     Petitioner's rights were violated when the trial judge was not recused in the state post-conviction proceedings; and

8.     There was insufficient evidence to support petitioner's conviction.

The State concedes that petitioner's federal application is timely filed.[1]

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under §2254(d)(1) and questions of fact are reviewed

---

[1] Rec. doc. 11, p. 3.  The State initially argued that petitioner's sixth claim was unexhausted and, therefore, the application should be dismissed as a mixed petition.  Rec. docs. 10, 11.  However, petitioner's sixth claim is now exhausted.  Rec. docs. 23, 24.

under §2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable

– 5 –

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2); <u>see also</u> <u>Hill</u>, 210 F.3d at 485; 28 U.S.C. §2254(e)(1).

## III.  FACTS

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> The victim's November 17, 1998 videotaped statement concerning the offense was introduced into evidence at trial.  The victim, M.N., stated her date of birth was May 9, 1990.  She lived in a trailer with her mother, her brother, her sister, and her stepfather, the defendant, whom she called "Jody."  She was shown drawings of a naked boy and a naked girl and identified the girl's vagina and the boy's penis as "privates."  In response to questioning concerning "touches that aren't okay" she indicated the defendant touched her on her private with his private. She indicated the defendant's skin touched her skin.  She identified her private by pointing to her groin and by pointing to the vagina on the drawing of a girl.  When asked if her clothes were off during the touching, the victim stated, "he just pulls down my pants."
>
> The last incident of touching occurred the previous Monday in the room the victim shared with her sister.  The victim's mother was at the other end of the trailer, and the victim's brother and sister were playing outside.  The victim was lying in bed playing Nintendo.  The defendant entered the room and asked to play Nintendo also.  The defendant laid on top of the victim and "then he started doing that."  The victim explained the defendant started "sticking his private in mine."  She demonstrated what had occurred with a male and a female doll.  She pulled the pants and panties of the dolls down and placed

the male doll on top of the female doll.  She
indicated the defendant had pulled her pants
down and moved on top of her "trying to get it
like how he wanted it."  The victim explained,
"his private part, he tried to get it how he
wanted it in my private part."   The victim
indicated "felt like something was trying to
get in there" and "it hurt."   When asked
whether the defendant did "get it in there"
the victim answered affirmatively.  When asked
how she knew, the victim stated, "because it
felt like he got it in there."  The victim
stated "it felt like a fish trying to get up
in there."  She continued, "then he got it in
and stopped moving."  The defendant kissed the
victim after he "got it in."   The victim
indicated when the defendant finished, he
"likes to pull some white stuff or pee onto
the floor and rubs it in."  She indicated the
"white stuff or pee" came from the defendant's
private, and the defendant rubbed it into the
rug "where no one can see it."

     The victim indicated the defendant
started touching her when she was in first
grade.  The first incident occurred in a barn
where her mother used to work.   It was
daylight on a Friday.  The victim knew it was
a Friday because "that's the only time my mom
lets us stay up late late."   The defendant
pulled down his pants, pulled down the
victim's pants, and told the victim to "be
quiet" and to "try not to make a sound."   The
victim indicated the defendant then "stuck his
private in mine."  It felt "like a fish was
trying to get in there."  Some "white stuff"
came out of the defendant's private and fell
on the hay.

     The victim indicated the incidents
occurred once or twice a week in the room she
shared with her sister, and the defendant had
told her not to tell anyone about the
incidents.

     The victim also testified at trial.  She
was ten years old, and her birthday was on May
9.[FN]  She answered questions indicating she

knew the difference between the truth and
lying.  She indicated "Jody" had touched her
in a bad way "in [the victim's] private parts"
with "[the defendant's] private part."  The
last incident was approximately two years
earlier.  The defendant's clothes "weren't off
but he kind of pushed them down," and he did
the same to the victim's clothes.  The victim
indicated "[I]t happened, like, every so
often."  The victim did not remember in which
room in the trailer the touching occurred and
did not remember what "it felt like."  She
also did not remember if any incidents had
occurred anywhere other than her house.

> [FN]  The victim testified on April
> 18, 2001.

The victim was shown a drawing of a naked
girl and asked to put an "X" where she was
touched in a bad way.  She placed an "X" on
the girl's vagina.  She was shown a drawing of
a naked man and asked "to do the same thing
because you've talked about your stepfather
touched you with his private part."  She
placed an "X" on the man's penis.
The state also presented testimony from
St. Tammany Parish Sergeant Grant Ross.
Sergeant Ross indicated the defendant told
him, "I wonder if I ought to just plead guilty
to this and get it over with."  Sergeant Ross
did not think the defendant was being
sarcastic.  On cross-examination, Sergeant
Ross added the defendant also stated he had
not committed the offense.
The state also presented testimony from
former Louisiana State Police Forensic
Scientist Joseph Brisalaro.  Brisalaro
detected seminal fluid on the victim's bed
sheet, but no sperm.  The seminal fluid was
left of center on the sheet.
The state also presented testimony from
Sheriff's Office Sergeant Susan Downey.
Sergeant Downey had been assigned to the crime
lab since August 1997.  She tested the

- 8 -

victim's bed linens for seminal fluid and the
tests were positive.

The state also presented testimony from
Louisiana State Police forensic scientist
Alejandro C. Verra.  Verra conducted serology
testing on a stain on the victim's bed sheet.
He indicated both the victim and the defendant
were "O" secretors and whoever left the
seminal stain was ABO blood type "O."  The
victim's mother was eliminated as a source of
the stain.  Blood type "O" secretors made up
approximately 32 percent of the U.S.
population.  At the time of the testing, the
Louisiana State Police crime lab did not have
the capacity to perform DNA testing.

The state also presented testimony from
forensic scientist, Gina Peneda.  Peneda
conducted DNA testing on the victim's bed
sheet.  She detected seminal fluid but no
sperm cells, and thus, no DNA profiling was
possible.  Peneda's findings indicated the
stains were left by someone with a low sperm
count, or someone who had been vasectomized,
or the stains were pre-ejaculate.

The state also presented testimony from
Children at Risk Evaluation Program Director,
Dr. Scott Benton.  Dr. Benton examined the
victim on December 23, 1998.  The victim's
physical exam was normal and Dr. Benton
discovered no past trauma on her body.

However, Dr. Benton explained a normal
exam was not inconsistent with sexual abuse.
Sexual abuse did not always cause trauma.
Additionally, trauma from sexual abuse, if
given sufficient time usually would heal
completely.  Dr. Benton explained:

In the case of where the child
says that he put his private part in
my private, you're thinking as an
adult you're thinking full
penetration into the vagina.  But
for a child who has no concept of
full penetration, it may have
penetrated slightly.  In fact, in

the literature we call this labial coitus, labial means lips and coitus means, I guess, insertion or penetration or connection.

And what happens in perpetrators who have confessed about what they have done to little kids as well as the children themselves who have no adult knowledge of the concept of full penetration, when the penis goes between the big lips of the outer vagina it doesn't actually cause trauma to the deeper structures like the hymen or inner vagina.

The defense presented testimony from Lorraine Anthony, the defendant's wife and the victim's mother. Lorraine Anthony did not believe the victim's allegations of sexual abuse against the defendant. She claimed she "was there all the time," and "a couple of times she said this happened Mr. Anthony, Jody, wasn't in my house when she did say this happened twice." She explained the seminal fluid on the victim's bed sheet as coming from the defendant having sex with her in the victim's bed at lunchtime. According to Lorraine Anthony, the defendant had sex with her in the victim's bed because "if we was in my room, we couldn't hear someone come up." She indicated the victim had a friend who had been molested.

The defendant also testified at trial. He claimed Sergeant Grant Ross told him if he (the defendant) confessed, he could spend the night in his own house. The defendant claimed he had sex with his wife in the victim's bed. He denied raping the victim.

State v. Anthony, No. 2002-KA-0906, at pp. 2-6 (La. App. 1st Cir. Feb. 14, 2003) (footnote omitted).  (St. ct. rec., vol. 9 of 11)

## IV.  PETITIONER'S CLAIMS

<u>Ineffective Assistance of Counsel</u>

In his first two claims, petitioner contends that he received ineffective assistance of counsel at trial and on appeal. In the state post-conviction proceedings, the state district court rejected those claims. Concerning petitioner's trial counsel, the state district court held:

> This Court will address the sub-parts of claim number 1 simultaneously, as each claim is based upon ineffective assistance of counsel. The Petitioner has alleged several deficiencies in trial counsel's representation. Specifically, because counsel for Petitioner failed to obtain an independent expert medical witness to rebut the testimony of the State's witness, Dr. Benton, the petitioner contends that this failure amounted to ineffective assistance of counsel. In addition, the Petitioner claims he received ineffective assistance of counsel when his attorney failed to "investigate and obtain witnesses that could have contradicted the testimony of the alleged victim."
>
> The Petitioner's right to the assistance of counsel is guaranteed by both the federal and state constitutions. In <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court elaborated that the benchmark for judging any claim of ineffectiveness of assistance of counsel must be whether counsel's conduct was so deficient as to undermine the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. In considering allegations of ineffectiveness, defense attorneys are entitled to a strong presumption that their conduct fell within a broad range of reasonable professional assistance. (See <u>United States v. Cronic</u>, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657

- 11 -

(1984); <u>State v. Brooks</u>, 505 So.2d 714 (La.), cert denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).)

In reviewing the transcript of the proceedings, this Court finds that Counsel was allowed thorough cross examination of the State's witness in regard to sub-part 1(a). The decision to employ or decline to employ independent medical testimony is one reserved for trial counsel.   Failure to obtain such testimony does not, in itself, constitute "conduct so deficient as to undermine the proper functioning of the adversarial process to an extent that the trial cannot be relied on as having produced a just result." <u>Strickland</u>, <u>supra</u>.   Therefore, this aspect of Petitioner's allegation of ineffectiveness is without merit.

In addition, Petitioner contends that his counsel failed to investigate the "many witnesses that would have testified the victim told them she was making up the entire story." In support of this claim, the Petitioner attached copies of affidavits of the particular witnesses to which he alludes.   In those exhibits several affiants give reports contrary to that evidence which was offered at trial.   Still, petitioner does not allege facts to indicate that these witnesses were either available to defense counsel at the time of trial or, if called, would have testified in the manner alleged.   Therefore, this portion of Petitioner's claim is also without merit.

Order on Application for Post Conviction Relief dated February 10, 2006, pp. 2-3.  (St. ct. rec., vol. 9 of 11)

As to petitioner's claim that his appellate counsel was ineffective, the state district court held:

Petitioner contends that he was denied effective assistance of counsel on appeal and denied a "full and fair review of sentencing

- 12 -

errors...."   In   connection   with   the
Petitioner's appeal, the record reveals that
an opinion was rendered by the First Circuit
Court of Appeal on February 14, 2003.  In that
opinion, the Appellate Court thoroughly
recounted the facts which were elicited
through the witnesses at trial.  The Court
considered the claims raised on appeal,
together with the evidence presented.  The
Court dismissed those claims as meritless and
found the evidence sufficient for a finding of
guilt beyond a reasonable doubt.  Further, the
Court reviewed the record for patent errors
and, finding none, confirmed the conviction
and sentence.  Nothing in the Appellate
Court's decision reflects that counsel's
assistance on appeal was substandard or
deficient.  Accordingly, claim number two does
not allege a claim which would entitle the
petitioner to relief.

Id. at 3.

The Louisiana First Circuit Court of Appeal and the
Louisiana Supreme Court thereafter likewise rejected the claims
without assigning additional reasons.  State v. Anthony, No. 2006
KW 0423 (La. App. 1st Cir. July 10, 2006); State ex rel. Anthony v.
State, 956 So.2d 602 (La. 2007).  (St. ct. rec., vol. 9 of 11)

Because a claim of ineffective assistance of counsel is
a mixed question of law and fact, this Court must defer to the
state courts on such claims unless the state court decision "was
contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of the
United States."  28 U.S.C. §2254(d)(1); Moore v. Cockrell, 313 F.3d

880, 881 (5th Cir. 2002).   Those exceptions are not met in this case.

As noted by the state court, <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), is the controlling federal law regarding such claims.   In <u>Strickland</u>, the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.   A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.   <u>Id</u>. at 697.   If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.   <u>Id</u>.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.   <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001).   "Counsel's performance is deficient if it falls below an objective standard of reasonableness."   <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998).   Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.   <u>See</u> <u>Strickland</u>, 466 U.S. at 689.   "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts

- 14 -

of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether the petitioner is challenging the actions of trial or appellate counsel.

In order to prove prejudice with respect to *trial* counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." <u>Crockett</u>, 796 F.2d at 793.

In order to prove prejudice with respect to *appellate* counsel, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient

- 15 -

representation.  <u>Briseno v. Cockrell</u>, 274 F.3d 204, 207 (5th Cir. 2001); <u>see also</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 286 (2000). Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. <u>Briseno</u>, 274 F.3d at 210.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  He "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000).

Petitioner's first contention is that his trial counsel should have called an expert witness to refute Dr. Benton's testimony.  Dr. Benton testified that, although there was no physical evidence of abuse, that absence was not conclusive because (1) there might have been no physical injuries if there was only slight penetration and (2) any injuries could have healed.

The United States Fifth Circuit Court of Appeals has noted:

> [U]nsupported claims regarding [an] uncalled
> expert witness are speculative and disfavored
> by this Court as grounds for demonstrating
> ineffective assistance of counsel.

Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002).  Further, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner must show that the testimony would have been favorable.  Id.  Petitioner has furnished neither the state courts nor this Court any evidence to show that an expert would have disputed Dr. Benton's conclusions.  Petitioner has, therefore, failed to establish that counsel was ineffective in failing to call such an expert witness.

Petitioner's next contention is that defense counsel should have called lay witnesses who would have testified contrary to the facts alleged by the victim.  However, again, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative."  Evans, 285 F.3d at 377.  This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue.  Id.

In support of his claim, petitioner did in fact attach to his state post-conviction application four affidavits, i.e. two from the victim's friends, one from the victim's sister, and one from petitioner's brother.  However, in those affidavits, which were executed many years after the crimes, the affiants merely state that the victim now denies that she was raped.  The affiants

do not state that the victim recanted her story *prior* to trial. Therefore, petitioner has not met his burden to prove that the affiants could have provided any exculpatory or impeachment evidence if called at trial.

Accordingly, petitioner has not shown that his counsel was ineffective in failing to call the affiants or any other additional lay witnesses.

Petitioner also claims that his appellate counsel was ineffective.  In the instant case, appellate counsel raised four claims on appeal. (St. ct. rec., vol. 11 of 11) Petitioner argues that his appellate counsel should also have raised the claims asserted in this federal application.  That argument fails for two reasons.

First, it is clear that "[c]ounsel is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." <u>West v. Johnson</u>, 92 F.3d 1385, 1396 (5th Cir. 1996).  As the United States Supreme Court has noted, "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises

every colorable issue runs the risk of burying good arguments ...
in a verbal mound made up of strong and weak contentions." Id. at
753.

Second, in any event, petitioner cannot show that any
prejudice resulted from counsel's failure to raise the additional
claims.  Both the state courts and this Court have considered
petitioner's post-conviction claims and found them to be utterly
without merit.  Therefore, petitioner cannot demonstrate that a
reasonable probability exists that the appellate court would have
vacated or reversed his conviction if the claims had been raised on
direct appeal.

Lastly, the Court notes that petitioner argues that, even
if his ineffective assistance of counsel claims fail when
considered individually, the specified "errors" warrant relief when
considered collectively.  This Court disagrees.  Where, as here,
the individual contentions are meritless, that result cannot be
changed simply by asserting them collectively.  United States v.
Hall, 455 F.3d 508, 520 (5th Cir. 2006), cert. denied, 549 U.S.
1343 (2007); Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir.
2000).

Because petitioner has not demonstrated that the state
court's decision rejecting his ineffective assistance of counsel
claims was contrary to, or involved an unreasonable application of,

clearly established federal law, as determined by the Supreme Court of the United States, the AEDPA's deferential standard requires that this Court likewise reject those claims.

<u>Challenges for Cause</u>

Petitioner claims that he was denied his right to a fair and impartial jury by the trial judge's denial of defense counsel's challenges for cause. It is clear that "[t]he standard for determining when a venire member may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." <u>Soria v. Johnson</u>, 207 F.3d 232, 242 (5th Cir. 2000) (quotation marks omitted). "[R]efusal to grant a challenge for cause is within the discretion of the trial court, and it does not provide a basis for habeas corpus relief unless the disqualifying fact was so prejudicial that the refusal deprived the petitioner of a fundamentally fair trial." <u>Sudds v. Maggio</u>, 696 F.2d 415, 416 (5th Cir. 1983).

In the instant case, petitioner claims that the trial judge erred in failing to excuse for cause Jennifer Henderson, Eydie Rymer, and Lori Slavich. The state courts rejected this contention on direct appeal and in the state post-conviction proceedings. Because "[a] state trial court's refusal of a petitioner's challenge for cause is a factual finding entitled to

a presumption of correctness," the state court's decisions on these claims must be accorded deference unless the decisions were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2); <u>Soria</u>, 207 F.3d at 242. Moreover, the state court's factual findings are "presumed to be correct" and petitioner has the burden of rebutting that presumption "by clear and convincing evidence." 28 U.S.C. §2254(e)(1). For the following reasons, this Court finds that such deference is warranted in the instant case.

Jennifer Henderson stated during voir dire that her father was the Slidell Chief of Police. Trial transcript, pp. 787-88. (St. ct. rec., vol. 4 of 11) However, Henderson stated that the relationship would not affect her ability to serve as a juror:

> THE COURT:
>     Okay. Well, then, certainly been around him a lot I would guess growing up and seeing the cases he's got to handle. Would that affect you as far as being fair and impartial if you were selected as a juror?
>
> MS. HENDERSON:
>     No.
>
> THE COURT:
>     You don't think you might have to explain to your dad that suppose you had to come back with a not guilty verdict.
>
> MS. HENDERSON:
>     I wouldn't think so. He brought me up right.

- 21 -

_Id_. at 788.  She also stated that she had never worked for the
Slidell Police Department.  _Id_. at 836.  She further denied ever
having heard defense counsel's name "around the house."  _Id_.  She
responded "No" when asked:  "Just because someone's wearing a
badge, does that mean they're going to tell the truth any more than
anyone else?"  _Id_.

Defense counsel thereafter challenged Henderson for
cause, and that challenge was denied:

> MR. SPELL [defense counsel]:
>      The defense would seek to strike Miss
> Henderson for cause on the basis that she
> testified that she does not believe that kids
> lie about sex.  Also on the basis that her
> father is Ben Morris who is the chief of
> police of Slidell.  I'd hate for him to find
> out in the middle of this trial that I'm on
> the other side.  I'm in a little battle with
> him right now.
>
> THE COURT:
>      About what?
>
> MR. SPELL:
>      Over another case, state of Louisiana
> versus Jason Hotard in Larry Greene's section.
> I filed several motions against Chief Ben
> Morris for the publicity in the case, the way
> he handled it.
>
> MS. WALL [a prosecutor]:
>      Your Honor, if I could respond, first of
> all, my recollection of Miss Henderson's
> answer was not that she didn't believe that
> children lie about sex but that she could
> judge their testimony.  She didn't think they
> lied any more often than adults; that she
> could judge their testimony the same as an

adult.    Furthermore,  in  response  to  the
allegation  that  she  should  be  excused  for
cause  because  of  her  father,  she  testified
quite  convincingly  that  she  has  never  heard
Mr.  Spell's  name  mentioned.    She  also  says
that  she  would  judge - she  would  not  be  more
likely  to  believe  police  officers  simply
because  they're  police  officers  and  she  said
unequivocally  that  she  could  be  fair  and
impartial.    We  would  object  to  the  challenge
for  cause.

THE COURT:
     Tell  me  more  about  what  kind  of  motion
you  have  filed  against  Ben  Morris?

MR. SPELL:
     I    can't    remember    exact    words    but
grandstanding  a  big  drug  bust  I  felt  destroyed
our  possibility  of  appropriate  defending  in
St.  Tammany  Parish.    I'm  trying  to  move  it  to
Washington  which,  of  course,  you  know  a
political  hot  bed.    I  don't  have  any  jurors  in
Washington  Parish.    It's  a  struggle  that  Mr.
Hoffstadt  and  I  are  currently  engaged  in.

MS. WALL:
     But  there  was  no - she  wasn't  questioned
about  that.    And  she  said  that  she  didn't  know
Mr.  Spell;  she  never  heard  his  name  mentioned
and  never  indicated  that  she  was  familiar  with
her  father's  involvement  in  any  particular
case.    This  is  not  a  case  involving  Slidell
officers;  it's  a  sheriff's  office  case.

MR. SPELL:
     More  importantly,  Your  Honor,  counsel  and
I  both  recall  specifically  hearing  she  doesn't
believe  that  children  lie  about  sex.    We  can
read  it  back,  but  that's  what  I  heard  her  say.
That's  what  Ann  heard  her  say.

MS. WALL:
     That's  not  my  recollection.

THE COURT:
        I'm going to have to go back and see it.

(COURT REPORTER REVIEWED NOTES WHERE MS. WALL
WAS QUESTIONING MS. HENDERSON AT VARIOUS
POINTS.)

THE COURT:
        Let the record reflect a thorough
research of the transcript fails to reveal any
statement by Ms. Henderson that she thinks
children would not make up stories about
sexual allegations.  During several minutes
it's taken to look that up, I mean, I've been
thinking about your allegations that you're
afraid she will find out during the course of
the trial that you are the infamous Buddy
Spell who has castigated –

MS. KNIGHT [a prosecutor]:
        She has gone through and said – this
isn't a Slidell PD case.

THE COURT:
        I've got to assume she will not discuss
this case with anyone like I'm going to order
anyone not to discuss the case.

MS. KNIGHT:
        She went through and considered the
question.  She knew who her father was.  She
considered it, thought about it.  She said,
no, she would waive that right.  She wouldn't
take anything into account.  There's not just
a prima facia [sic] if you have an officer or
someone high up in the police force that you
can't serve on a jury.  Especially this isn't
even a Slidell PD case.  Ben Morris probably
couldn't care about the sheriff's office case.
He is about to retire.

THE COURT:
        Also I watched her demeanor when she was
answering questions especially about
credibility of police officers.  I don't think

– 24 –

she was just giving the right answer because
she knew the right answer to give.  Motion to
excuse for cause is denied.

Trial transcript, pp. 838-42.  (St. ct. rec., vol. 4 of 11)

Petitioner raised his claim concerning Henderson on
direct appeal.  The Louisiana First Circuit Court of Appeal
rejected that claim, holding:

> [T]he defendant contends the trial court
> deprived the defendant of due process by
> leaving the daughter of the police chief of
> Slidell on the jury after she had been
> challenged for cause.  The prospective juror
> referenced is Jennifer Henderson.
>
> Initially, we note that the defendant
> exhausted his peremptory challenges.  Thus, if
> he establishes an erroneous denial of a
> defense challenge for cause, prejudice is
> presumed, and there is reversible trial court
> error.  See **State v. Ross**, 623 So.2d 643, 644
> (La. 1993).
>
> The state or the defendant may challenge
> a juror for cause on the ground the juror is
> not impartial, whatever the cause of his
> partiality.  La. Code Crim. P. art. 797(2).
>
> A trial court is vested with great
> discretion in ruling on challenges for cause,
> and that ruling will not be disturbed unless a
> review of the voir dire as a whole indicates
> an abuse of that discretion.  **State v. Berry**,
> 95-1610, p. 4 (La. App. 1st Cir. 11/8/96), 684
> So.2d 439, 447, writ denied, 97-0278 (La.
> 10/10/97), 703 So.2d 603.  A refusal by a
> trial court to excuse a prospective juror on
> the ground he is not impartial is not an abuse
> of discretion where, after further inquiry or
> instruction, he has demonstrated a willingness
> and ability to decide the case impartially
> according to the law and the evidence.  **State
> v. Copeland**, 530 So.2d 526, 534 (La. 1988),

cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989).

During the trial court's questioning of the third group of prospective jurors, prospective juror, Jennifer Paige Henderson, indicated her father was the Slidell Chief of Police. In response to further questioning, Henderson indicated the fact her father was the Slidell Chief of Police would not affect her as far as being fair and impartial if she was selected as a juror. Henderson further indicated that she did not think she would have to explain a not guilty verdict in the case to her father.

In response to questioning by defense counsel, Henderson indicated she had never heard defense counsel's name "around the house." She also indicated she had never worked for the Slidell Police Department.

The defense challenged Henderson for cause on the basis she testified she did not believe that kids lied about sex, on the basis her father was Ben Morris, the Slidell Chief of Police, on the basis defense counsel was "in a little battle with [Morris] right now." Defense counsel explained, in an unrelated case, he had filed motions against Morris concerning his handling of publicity in the unrelated case.

The court ruled a thorough research of the transcript failed to reveal any statement by Henderson that she thought children would not make up stories about sexual allegations; the case was not a Slidell Police Department case; and based upon observation of Henderson's demeanor while answering questions concerning the credibility of police officers, the court did not believe she was just giving the right answer because she knew the right answer to give. The court denied the defense challenge for cause, Henderson became the twelfth juror, and the defense objected to the court's ruling.

....

> Considering Henderson's responses to the
> voir dire examination as a whole, there was no
> abuse of the trial court's discretion in
> regard to the ruling on the defendant's
> challenge for cause against Henderson.

State v. Anthony, No. 2002-KA-0906, at pp. 11-13, 16.  (St. ct.
rec., vol. 9 of 11)  The Louisiana Supreme Court likewise rejected
the claim without assigning additional reasons.  State v. Anthony,
853 So.2d 637 (La. 2003).

It is evident that the trial judge correctly denied this
challenge for cause.  The fact that Henderson's father was the
Slidell Chief of Police did not render her ineligible to serve.
Petitioner was not arrested by Henderson's father or his
department, and she expressly stated that the relationship would
not affect her ability to serve impartially.  The mere fact
Henderson was related to a law enforcement officer was not a
sufficient basis to excuse her for cause.  See, e.g., United States
v. Munoz, 15 F.3d 395, 396-98 (5th Cir. 1994); United States v.
Bryant, 991 F.2d 171, 174 (5th Cir. 1993); Brogdon v. Butler, 838
F.2d 776, 778 n.1 (5th Cir. 1988); Sudds v. Maggio, 696 F.2d 415,
416-17 (5th Cir. 1983).  Further, Henderson stated that she had not
heard of defense counsel and there was no basis whatsoever for
concluding that she was aware of the legal dispute between her
father and defense counsel in an unrelated case.  Lastly, the
additional grounds urged in the challenge were not supported by the

record.   In light of the foregoing, it cannot be said that the trial judge's determination that Henderson was eligible to serve was in any way unreasonable.

In the post-conviction proceedings, petitioner additionally argued that Eydie Rymer and Lori Slavich should have been excused for cause.   That claim was likewise denied, with the state district court holding:

> In this claim, the Petitioner contends that the trial court's denial of the *for cause* challenges produced an unconstitutional result.  In particular, the Petitioner objects to the trial court's ruling with regard to jurors Lori Slavich, Eydie Rymer, and Jennifer Henderson.   The defense moved to excuse these prospective jurors *for cause* and the court denied the motions.   On appeal, Petitioner sought review of the trial court's denial of the challenge against juror Jennifer Henderson.   Fully reviewing the claim as to this particular juror, and stating that the trial court "is vested with great discretion in ruling on challenges for cause," the Appellate Court found no error.   Applying the Appellate Court's reasoning to the claims alleged herein by Petitioner regarding Lori Slavich and Eydie Rymer, this Court finds that claim number three does not allege a claim which would entitled the petitioner to relief.

Order on Application for Post Conviction Relief dated February 10, 2006, p. 3.   The Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court thereafter also rejected the claim without assigning additional reasons.   <u>State v. Anthony</u>, No. 2006 KW 0423

– 28 –

(La. App. 1st Cir. July 10, 2006); <u>State <em>ex rel.</em> Anthony v. State</u>, 956 So.2d 602 (La. 2007).  (St. ct. rec., vol. 9 of 11)

  Petitioner argues that Eydie Rymer should have been excused for cause on the ground that she had family members who had been victims of crimes.  When the prospective jurors were asked whether they had a friend or relative who had been a victim of a crime, Rymer asked to approach the bench.  She explained:

> MS. RYMER:
>   It was a very long time ago when I was a teenager.  My godmother's husband [sic] two children were murdered by two men who were awaiting trial in the county jail.  They escaped and Miss Francine was raped and tortured.  It was ...
>
> THE COURT:
>   How long ago?
>
> MS. RYMER:
>   I was – '75, '73.  I was in high school.
>
> THE COURT:
>   Would that prevent you being fair and impartial if you were a juror in this case.
>
> MS. RYMER:
>   I don't think so.
>
> THE COURT:
>   Were they ever caught and prosecuted or?
>
> MS. RYMER:
>   Two of them were.
>
> THE COURT:
>   It was more than two?
>
> MS. RYMER:

(NODS HEAD.)   This happened in another state so you wouldn't have known about it.

THE COURT:
    Okay.  Anybody have any questions?

MS. KNIGHT:
    Could you sit here and listen to the evidence – scratch that.  If you were picked on the jury, would you hold against this defendant what has happened to a friend of yours?

MS. RYMER:
    No.

MS. KNIGHT:
    Would you still listen to all of the evidence and all of the witnesses, what they would say?  You wouldn't just necessarily say since he is charged with this and something horrible happened that I will convict him?

MS. RYMER:
    Yes.

MS. KNIGHT:
    You would listen to the evidence?

MS. RYMER:
    Yes.

MS. KNIGHT:
    You wouldn't just convict him.

MR. SPELL:
    Ms. Rymer, you seem very emotional about this.   This is certainly understandable.  Would this be going through this trial which will have a lot of technical evidence, do you think it will be emotionally debilitating to you?

MS. RYMER:
    I don't think so.

Trial transcript, pp. 607-09.  (St. ct. rec., vol. 3 of 11)

Based on that exchange, defense counsel challenged Rymer for cause:

> MR. SPELL:
>     Your Honor, I had some concerns about her emotional stability up here.  I felt like she was shaky and stuttering and nervous.  She had a horrible thing happen to her family.  One of the elements of her suffering is the crime of rape.  I would think she would be improper for this case.
>
> MS. KNIGHT:
>     Your Honor, she didn't give any waver.  She said she was emotional.  She could have been emotional and nervous about talking to us.  She was nervous out there.  I think it's a nervous experience.  She said she could be fair and impartial.  It didn't happen here.
>
> THE COURT:
>     Motion for cause is denied.

Id. at 688-89.

In light of Rymer's statement that she could be fair, the mere fact that members of her family had been victims of crime was not alone a basis on which to excuse her for cause.  See, e.g., United States v. Bryant, 991 F.2d 171, 174 (5th Cir. 1993) (upholding denial of cause challenge of a prospective juror whose father was murdered); see also United States v. Miquel, 111 F.3d 666, 673 (9th Cir. 1997).  Further, based of the record, this Court simply cannot say that the state court's decision that Rymer was qualified to serve was "based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2). Moreover, it is evident that petitioner has not adequately rebutted the state court's factual finding by clear and convincing evidence.  See 28 U.S.C. §2254(e)(1). Accordingly, petitioner has not demonstrated that he is entitled to relief based on the denial of this challenge for cause.[2]

Petitioner next argues that Lori Slavich should have been excused for cause because she works in law enforcement.  The voir dire transcript reflects the following exchange:

> MS. SLAVICH:
>     I'm commissioned narcotics officer in Mississippi.  I'd rather not name the county.
>
> THE COURT:
>     Okay.
>
> MS. SLAVICH:
>     And associated with quite a few narcotics officers and have worked in St. Tammany and Tangipahoa Parish.

---

[2] Out of an abundance of caution, this Court notes that it expressly rejects petitioner's argument that Rymer should have been excused in light of the fact that the trial judge excused Judith Rogers, Darlene Genovese, and Mildred Thomas.  Those jurors were dismissed on entirely different grounds.  Rogers was excused because she herself had been abused as a child.  Trial transcript, pp. 620, 686.  (St. ct. rec., vol. 3 of 11)  Genovese and Thomas were excused because they were teachers who worked with children and, in light of that fact, they stated that they were unsure that they could be unbiased in this case involving the rape of a child. Id. at 619-20, 642-43, 679-80, 685, 688.

            THE COURT:
                Would that prevent you being fair and
            impartial?

            MS. SLAVICH:
                No.

Trial transcript, pp. 614-15.  (St. ct. rec., vol. 3 of 11)  The

issue was later revisited:

            MR. SPELL:
                ... Miss Slavich, you knew I was coming
            back to you, didn't you?  I don't want to know
            what county, how long have you been affiliated
            with narcotics, do you remember, across the
            state line?

            MS. SLAVICH:
                Eight years.

            MR. SPELL:
                Eight years.   Did you attend police
            academy?

            MS. SLAVICH:
                Yes, I have.

            MS. SPELL:
                And did I understand you to say that you
            have worked in cooperation with local agencies
            as well?

            MS. SLAVICH:
                Yes, I have.

Id. at 683-84.

            Based  on that information, the defense challenged her

for cause:

            MR. SPELL:
                I move for cause on that one.  She is a
            law enforcement officer in this jurisdiction.

                                    – 33 –

MS. KNIGHT:
    She said she could – she had no waver
about being unfair, impartial.

THE COURT:
    I heard her says she is really involved
across state lines as a law enforcement
officer.  She said her – she said her friend
was molested as a child.  I don't think she
was just saying the right things.  She said it
wouldn't affect her as far as being fair and
impartial.  Your motion for cause is denied.

Id. at 687.  The defense then used a peremptory challenge to strike

Slavich.  Id. at 688.

    Petitioner's claim as to Slavich fails for two reasons.

    First, in light of Slavich's unequivocal assertion that

she could be impartial, her connection with law enforcement was not

alone a basis on which to excuse her for cause.  See, e.g., United

States v. Bryant, 991 F.2d 171, 174 (5th Cir. 1993) (upholding

denial of cause challenge of a prospective juror who was a chief

criminal deputy sheriff for sixteen years prior to his retirement);

see also United States v. Morales, 185 F.3d 74, 83-84 (2nd Cir.

1999); United States v. Blum, 65 F.3d 1436, 1442 (8th Cir. 1995);

United States v. McIntyre, 997 F.2d 687, 697 (10th Cir. 1993).

Further, based of the record, this Court simply cannot say the

state court's decision that Slavich was qualified to serve was

"based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."  28 U.S.C.

§2254(d)(2).   Moreover, it is evident that petitioner has not adequately rebutted the state court's factual finding by clear and convincing evidence.   See 28 U.S.C. §2254(e)(1).

Second, defense counsel used a peremptory challenge to strike Slavich.   Where a challenged juror is removed by use of a peremptory challenge after the denial of a challenge for cause, a petitioner is entitled to federal relief only if he demonstrates that the jury ultimately selected to try the case was not impartial.   Ross v. Oklahoma, 487 U.S. 81, 85-86 (1988). Petitioner has made no such showing in this case.

<u>Judicial Bias</u>

Petitioner next claims that the trial judge was biased. In rejecting that claim in the post-conviction proceedings, the state district court held:

> Petitioner contends in this claim he was denied due process because the trial judge continually ruled in favor of the prosecution. This bias is alleged to be present in the manner in which the court conducted the trial (i.e. granting requests for a break by the prosecution and denying same when requested by defense, and rushing defense counsel while allowing the prosecutors unlimited time). This Court has reviewed the record in light of the claims raised. In addition, the Court of Appeal twice considered such claim previously: first in its review for patent errors and second on a writ application from the trial court's denial of Petitioner' Motion to Recuse Judge Badeaux. Accordingly, this claim is

– 35 –

repetitive, has no merit, and will be dismissed without answer.

Order on Application for Post Conviction Relief dated February 10, 2006, p. 4. The Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court likewise rejected the claim without assigning additional reasons. State v. Anthony, No. 2006 KW 0423 (La. App. 1st Cir. July 10, 2006); State ex rel. Anthony v. State, 956 So.2d 602 (La. 2007). (St. ct. rec., vol. 9 of 11)

Regarding claims of judicial bias, the United States Fifth Circuit Court of Appeals recently noted:

> Defendants in the American judicial system have the right to a fair trial, and part of this right is fulfilled by a judicial officer who impartially presides over the trial. However, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard. A judge will, however, violate a defendant's due process rights if he is biased against the defendant or has an interest in the outcome of the case. A likelihood or appearance of bias can disqualify a judge as well. A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him.
> Bias is a difficult claim to sustain under AEDPA because the Supreme Court's case law on bias has acknowledged that what degree or kind of interest is sufficient to disqualify a judge from sitting cannot be defined with precision. Generally, the Supreme Court has recognized two kinds of

judicial bias:  actual bias and presumptive bias.
          Almost every bias case before the Supreme Court that has found a due process violation has done so based on presumptive bias. There are three situations in which the Supreme Court has found presumptive bias:

>     (1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints.

Buntion v. Quarterman, 524 F.3d 664, 672 (5th Cir. 2008) (citations, quotation marks, and brackets omitted), cert. denied, 2009 WL 425154 (U.S. Feb. 23, 2009).  Therefore, "it is only clearly established by Supreme Court precedent that presumptive bias exists in the three circumstances discussed above." Richardson v. Quarterman, 537 F.3d 466, 476 (5th Cir. 2008) (emphasis in original), cert. denied, 2009 WL 425133 (U.S. Feb. 23, 2009).

          Because petitioner's allegations against the trial judge in the instant case do not involve any of the established bases for presumptive bias, the instant claim implicates only the prohibition against actual bias.  See Buntion, 524 F.3d at 673.  However, as one federal court noted:

- 37 -

On federal habeas review of a state trial judge's conduct, the issue is not the presence of judicial misconduct. Rather, the issue is whether, in the context of the trial as a whole, the judge's behavior rendered the trial so fundamentally unfair as to violate due process. Although due process is presumed to be violated where there is actual bias or a factual basis for bias on the part of the judge, the Court must otherwise presume the judge's honesty and integrity. *Judicial rulings alone almost never constitute a valid basis for bias or a partiality motion.*

<u>Chamberlain v. Pliler</u>, 307 F.Supp.2d 1128, 1145 (C.D. Cal. 2004) (emphasis added; citations, quotation marks, and brackets omitted).

Despite the fact that some of the judge's actions and rulings in the instant case were arguably imprudent, they simply are not evidence of actual bias. Accordingly, petitioner has not established that he is entitled to relief based on this claim.

<u>Prosecutorial Misconduct</u>

Petitioner next claims that the prosecution engaged in various acts of misconduct. Specifically, he contends that (1) Dr. Benton was called as a witness merely to prejudice the jury, (2) the prosecution violated the court's sequestration order, and (3) the prosecution wrongly withheld evidence.

When petitioner asserted these contentions in the post-conviction proceedings, the state district court failed to address the first two contentions. The court ruled that the third contention need not be addressed because it was essentially a

reiteration of a claimed <u>Brady</u> violation which had been rejected on direct appeal.  Order on Application for Post Conviction Relief dated February 10, 2006, p. 4.  (St. ct. rec., vol. 9 of 11)  The Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court thereafter denied petitioner's related writ applications without assigning reasons.  <u>State v. Anthony</u>, No. 2006 KW 0423 (La. App. 1st Cir. July 10, 2006); <u>State <i>ex rel.</i> Anthony v. State</u>, 956 So.2d 602 (La. 2007).  (St. ct. rec., vol. 9 of 11)

      "Absent a violation through prosecutorial misconduct of a specific guarantee of the Constitution, habeas corpus relief will not be granted unless the prosecution's conduct renders the trial <i>fundamentally unfair</i> so as to deny a defendant due process of the Fourteenth Amendment." <u>Branch v. Estelle</u>, 631 F.2d 1229, 1233 (5th Cir. 1980) (emphasis added); <u>see also</u> <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").  The United States Fifth Circuit Court of Appeals has explained:

> Under this test, a prosecutor's misconduct may render a defendant's trial less than perfect, but the imperfection must have rendered the trial unfair in order to be constitutional error.  A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted.

<u>Foy v. Donnelly</u>, 959 F.2d 1307, 1317 (5th Cir. 1992) (citation omitted); <u>see also Styron v. Johnson</u>, 262 F.3d 438, 449 (5th Cir. 2001) ("Prosecutorial misconduct is not a ground for relief unless it casts serious doubt upon the correctness of the jury's verdict.").

As noted, petitioner's first contention is that the prosecutor acted improperly in calling Dr. Benton as a witness because his testimony was "marginally relevant and highly prejudicial." That contention merits scant consideration. Dr. Benton's testimony explained why the lack of physical injury was not necessarily inconsistent with the victim's allegations of rape. That testimony was obviously highly relevant and was in no way unfairly prejudicial. Accordingly, the prosecutor clearly did not act improperly in presenting it.

Petitioner's second contention is that the prosecutor acted improperly by violating the court's sequestration order. During her testimony, Allison Nations testified that she had been present when Detectives Ross and Rickles interviewed petitioner during their investigation. Trial transcript, p. 1330. (St. ct. rec., vol. 6 of 11) She was then asked, "Are you aware both Detective Ross and Detective Rickles stated that you were not present for that interview of Jody Anthony?" She responded, "I'm

aware of that." Id. at 1331.   The source of that information was
then explored on cross-examination:

> Q.   Who told you that Detective Ross
> testified that you were not present for
> that interview?
>
> A.   I don't recall who.  I just heard it, you
> know, like, Grant Ross took the stand.
>
> Q.   Who told you that Detective Rickles
> testified you were not there for the
> interview?
>
> A.   I didn't hear that.  I heard about Grant.
>
> Q.   So who told you that Detective Grant Ross
> had taken the stand?
>
> A.   It was in, like, a conversation that they
> were just — we were talking about who
> was, like, the line up or second, like
> that.  How who was going to go next and.
>
> Q.   How many people were present in that
> conversation you had?
>
> A.   Oh, gosh, I don't really remember.
>
> Q.   Why don't you tell us, was Ms. Knight
> present?
>
> A.   It was probably Leigh Ann or Julie.  I
> don't remember.
>
> Q.   Any other people like Detective Ross or
> Detective Rickles?
>
> A.   No.  Actually, I haven't had any contact
> with them, at least not about this.  I
> mean in other cases but.
>
> Q.   So you had a conversation with either
> Miss Knight or Miss Wall about the lineup

and at some time in that conversation you
were made aware that Detective Ross
testified that you were not present
during the interview of Jody Anthony at
the sheriff's office the day after the
allegations were made?

A.   It seems like I - that, yeah, I do have
that knowledge.  But, you know, I was
there so ...

Q.   Were you aware that you were under a
sequestration order as a witness in this
trial not to discuss anybody's testimony?

A.   I didn't discuss anybody's testimony.

Q.   Did someone tell you what Detective Ross
testified to?

A.   No.  I think it was we were talking about
- I can't remember what day this was or
anything but sometime this week I'm
assuming it was Leigh Ann and me.  That's
the only people I've been talking to.
Leigh Ann and Julie were talking about
the order and I think I was asked about
the interview at the sheriff's office if
I was there or not so, but ...

Trial transcript, pp. 1332-33.  (St. ct. rec., vol. 6 of 11)

        Apparently satisfied, defense counsel then proceeded to

another topic without objection.  Nevertheless, the prosecutor

later stated during a bench conference:

        MS. KNIGHT:
            Can I put something on the record, Your
        Honor?  I want to apologize to the Court and
        to the Spells that I didn't realize the last
        witness Allison Nations would overhear Leigh
        Ann Wall.  We had three conversations going
        on.  It was my intention for her to hear my -

> not my intention for her to hear anything we
> talked about.   I will be – I was sick
> yesterday.  Maybe I wasn't paying attention.
> I will make sure that I keep to my P's and
> Q's, make sure no one is listening to me.  I
> don't believe we have any witnesses in the
> office.
>
> MR. SPELL:
>      Thank you for putting that on the record,
> Miss Knight.

Id. at 1360.

Even if these events constituted a violation of the sequestration order, inadvertent or otherwise, the violation was of no consequence.  The matter at issue was a minor one which in no way touched on petitioner's guilt or innocence.  There is simply no reasonable probability that the verdict in this case might have been different if only Nations had been unaware of Grant's testimony on this minor point.  Therefore, even if the prosecutor acted improperly in this respect, her action does not warrant the granting of federal habeas corpus relief.

Petitioner's third and final contention with respect to this claim is that the prosecution wrongly withheld the audiotape Nations made when she interviewed the victim.  For the following reasons, that contention has no merit.

On direct appeal, the First Circuit Court of Appeal found that the audiotape had not been improperly withheld:

[T]he defendant contends the trial court erred in refusing to declare a mistrial "upon discovery that evidence (an audiotape taken November 17, 1998, by OCS employee Allison Nations from the alleged victim, M.N.), which was clearly **Brady** material, had been purposely withheld from counsel for Defendant Joseph Anthony, to the material prejudice of the defense."

The prosecutor may not suppress evidence which is favorable to the accused and material to either guilt or punishment. **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Favorable evidence includes both exculpatory evidence and evidence impeaching the testimony of a witness when the reliability or credibility of that witness may be determinative of defendant's guilt or innocence, or when it may have a direct bearing on the sentencing determination of the jury. **United States v. Bagley**, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); **Giglio v. United States**, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). When **Brady** matter is withheld, a defendant is entitled to a new trial only if the evidence is "material." Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." **Bagley**, 473 U.S. 682, 105 S.Ct. at 3383; **State v. Seals**, 95-0305, pp. 14-15 (La. 11/25/96), 684 So.2d 368, 378-79, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).[FN]

[FN] In brief to this court, the defense argues "when a **Brady** violation has been found, the issue is not whether the result would have been different, but whether the fairness of the trial was undermined[,]" citing **State v.**

- 44 -

**Walter**, 96-1702 (La. 6/20/97), 695
So.2d 1340.   In **Walter**, the court
recognized    "[t]he    untimely
disclosure as well as non-disclosure
of exculpatory evidence may deprive
the defendant of a fair trial."
However, the court in **Walter** further
recognized, "[o]n remand, the court
of appeal must determine whether as
the result of the state's untimely
disclosure, the inability of the
defense   to   place   all   evidence
relevant to the reliability of the
victim's   identification   testimony
'undermines    confidence    in    the
outcome of the trial.'"  **Walter**, 96-
1702, 695 So.2d at 1341, <u>citing</u>
**Kyles v. Whitley**, 514 U.S. 419, 434,
115 S.Ct. 1555, 1566, 131 L.Ed.2d
490 (1995) (<u>quoting</u> **Bagley**, 473 U.S.
at 678, 105 S.Ct. at 3381).

During her testimony at trial, M.N.
indicated that before she left school on the
day she reported sexual abuse, "these people
they talked to me and I think she had a tape
recorder and they were, I think they were
taping everything[.]"  Thereafter, the state
revealed that on the previous day, it had
learned of an audiotaped interview between the
victim and Office of Community Services
investigator, Allison Nations.  The state
indicated it had no previous knowledge of the
audiotape and had advised Nations to review
the tape and make certain it did not contain
anything "inconsistent or **Brady**."  Nations
complied with he state's instructions and
advised the state the tape was very inaudible.
The state indicates Nations "tapes instead of
jotting down whatever they say" and then uses
the taped interview to type the "44" report,
which defense counsel had been given.  The
state further indicated it had brought the
tape to court for review by "everyone."

The defense stated the trial court had ordered the entire OSC files to be produced for in camera inspection. Following a recess, the court indicated it had discovered a duplicate file from OCS and had copied information for the defense "that could prove possibly favorable to the defendant." The court indicated the OCS file did contain an audiotape, but the tape was mostly unintelligible. In response to defense counsel's inquiry as to whether or not the court had discovered any **Brady** material on the tape, the court stated, "No, none whatsoever." The state indicated it had not had a copy of the OCS file.

The defense moved for a mistrial on the basis of the state's failure to disclose the existence of the audiotape. The state responded it only learned of the existence of the tape the previous day, immediately instructed the OCS worker to locate the tape and listen to the tape, and had the tape brought to court before lunch.[FN] The court recognized it had a responsibility to conduct in camera review before trial started, but noted the defense had failed to state there were outstanding motions when the court inquired about outstanding motions prior to the commencement of trial. The court ruled there were no grounds for mistrial on the basis the court had reviewed the OCS file during lunch recess or on the basis of the late disclosure of the audiotape. The defense objected to the court's rulings.

[FN] It should be noted that the state cannot relieve itself of the obligations under **Brady** by stating that it did not have possession of the material and was unaware of its existence when the material was obviously available to the state had the prosecutor made any effort at all to determine if such material existed. The prosecutor did not

explain why her office had not
requested the file before trial.

Subsequently, the defense repeatedly used
the audiotape during cross-examination of
Nations.
There was no abuse of discretion in the
trial court's denial of the motion for
mistrial.  A careful review of the audiotape
indicates the victim's responses to Nations's
questions are inaudible.  Further, to the
extent Nations repeated the victim's answers,
those answers are consistent with the
information supplied to the defense in the
"44" report and do not constitute exculpatory
evidence or evidence impeaching the testimony
of a witness when the reliability or
credibility of that witness may be
determinative of defendant's guilt or
innocence.  There is no reasonable probability
sufficient to undermine confidence in he
outcome that, had the evidence been disclosed
to the defense, the result of the proceeding
would have been different.
This assignment of error is without
merit.

State v. Anthony, No. 2002-KA-0906, at pp. 6-9.  (St. ct. rec.,

vol. 9 of 11)   The Louisiana Supreme Court likewise denied

petitioner's related writ application.   State v. Anthony, 853 So.2d

637 (La. 2003).

This Court agrees with the foregoing analysis of the

state court.  Moreover, the United States Supreme Court has held:

We set out in Strickler v. Greene, 527 U.S.
263, 281-282, 119 S.Ct. 1936, 144 L.Ed.2d 286
(1999), the three components or essential
elements of a Brady prosecutorial misconduct
claim:   "The evidence at issue must be
favorable to the accused, either because it is

> exculpatory, or because it is impeaching; that
> evidence must have been suppressed by the
> State, either willfully or inadvertently; and
> prejudice must have ensued." 527 U.S., at
> 281-282, 119 S.Ct. 1936.

Banks v. Dretke, 540 U.S. 668, 691 (2004).  In this case, it is evident that (1) the largely unintelligible audiotape was neither exculpatory nor impeaching, (2) the audiotape was not in fact suppressed,[3] and (3) no prejudice resulted from its delayed disclosure.

Accordingly, for all of the foregoing reasons, the Court finds no merit to petitioner's contention that he is entitled to federal habeas corpus relief based on the prosecutor's purported misconduct.

### Newly Discovered Evidence

Petitioner claims that he now has newly discovered evidence establishing his innocence.  In the post-conviction proceedings, the state district court found that the new evidence was insufficient to warrant relief, holding:

> Petitioner now contends that newly-
> discovered exculpatory evidence has come to
> light in the form of a recantation of the

---

[3] The audiotape was produced in time for defense counsel to use it during trial.  Accordingly, it was not "suppressed" in violation of Brady and its progeny.  See, e.g., Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994); United States v. McKinney, 758 F.2d 1036, 1049-50 (5th Cir. 1985); Amos v. Cain, Civ. Action No. 04-2029, 2008 WL 782472, at *4 (E.D. La. Mar. 30, 2008).

- 48 -

testimony of the victim in his matter. This
evidence is attached to the Post Conviction
Relief Application in the form of Affidavits
(See Exhibits "A" - "E"). Upon review of the
evidence, it consists of affidavits made by:
two friends of the victim, the victim's
sister; Petitioner's brother; and the victim.

The first four affidavits aver that the
victim denies that she was ever raped or
sexually abused by Petitioner. The last, made
by the victim herself, recants her testimony
at trial, stating now that she was never raped
or sexually abused by Petitioner and that
being "interrogated for many hours by the
Office of Community Services" influenced her
"to say something that was untrue."

These affidavits do not say that those
making them were told by the victim at the
time of the trial that she had not been raped
or abused; rather, they say that she says this
now. This Court, therefore, finds that this
evidence wasn't available at the time of the
trial and that, as newly available evidence,
Petitioner's contention was made timely and
must be reviewed.

It is well-settled in Louisiana that
recantations of trial testimony are to be
regarded with the "utmost suspicion." State
v. Clayton, 427 So.2d 827, 832 (La. 2/23/83).
Such a recantation is an admission of perjury
which destroys the credibility of the witness.
Id.; State v. Wright, 598 So.2d 561, 564 (La.
App. 4 Cir. 4/14/92).

In the instant matter, the victim has
continued to reside with her mother, the
Petitioner's wife, who contended at the time
of the trial that the victim was being
untruthful. The victim, between six and eight
years old during the time of the her [sic]
abuse, was a child of almost eleven at the
time of the trial. Three years elapsed during
which the victim lived under the care of her
mother, a woman who had not wanted her husband
convicted. It beggars belief to think that
during those years the victim was not even

- 49 -

urged to recant her testimony. The victim's
testimony at trial was found believable by the
jury, and this Court is unwilling to find this
later recantation, occurring as it did year
after trial and tainted by the circumstances
under which the victim lived, to be truthful.
    Moreover, this Court also notes that
there was no physical evidence of the victim's
rape or abuse, in part because be was not
examined in a timely manner, something noted
at length by Petitioner in his Application for
Post Conviction Relief. However, "it is well-
settled that the testimony of a victim in a
rape case is sufficient to prove the elements
of the offense." <u>Wright</u>, at 564-5. Since
this Court does not believe the veracity of
the victim's recantation, her original
testimony, coupled with that of other defense
[sic] witnesses, suffices to prove the
elements of rape in this matter.
    For these reasons, this Court finds
Petitioner's sixth claim to be, like the five
before it, without merit.

Order on Application for Post Conviction Relief dated July 31,
2007. (Rec. doc. 6) The Louisiana First Circuit Court of Appeal
and the Louisiana Supreme Court likewise denied relief without
assigning reasons. <u>State v. Anthony</u>, No. 2007 KW 1779 (La. App.
1st Cir. Dec. 27, 2007)(Rec. doc. 16); <u>State <i>ex rel</i>. Anthony v.
State</u>, 992 So.2d 1032 (La. 2008) (Rec. doc. 19).

    Petitioner's claim that habeas relief is warranted
because the victim's recantation proves his innocence must be
rejected. "Claims of actual innocence based on newly discovered
evidence have never been held to state a ground for federal habeas
relief absent an independent constitutional violation occurring in

the underlying state criminal proceeding." <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993); <u>see also</u> <u>Shaver v. Ellis</u>, 255 F.2d 509, 511 (5th Cir. 1958) ("[I]t is clear that questions of guilt or innocence are not matters to be considered upon petition for habeas corpus.  The sole purpose of such proceedings is to test the validity or legality of the restraint of the petitioner.").  "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." <u>Herrera</u>, 506 U.S. at 400.  Therefore, the mere fact that a witness recanted her testimony after trial is not a basis for granting habeas relief. <u>Anderson v. Maggio</u>, 555 F.2d 447, 451 (5th Cir. 1977).

<u>Recusal</u>

In connection with his state post-conviction application, petitioner filed a motion for recusal of the trial judge, Reginald T. Badeaux, III, from presiding in the post-conviction proceedings.  After a hearing on October 21, 2004, Judge William J. Knight denied the motion for recusal of Judge Badeaux.  Transcript of October 21, 2004; Minute entry dated October 21, 2004.  (St. ct. rec., vol. 9 of 11)  The Louisiana First Circuit Court of Appeal and the Louisiana Supreme then denied petitioner's related writ applications. <u>State v. Anthony</u>, No. 2004 KW 2596 (La. App. 1st

Cir. Mar. 7, 2005); <u>State *ex rel.* Anthony v. State</u>, 922 So.2d 1168 (La. 2006).  (St. ct. rec., vol. 9 of 11)

In this proceeding, petitioner again claims that the trial judge should have been recused from presiding over the post-conviction proceedings because one of the claims for relief was that the judge was biased.  That claim is not cognizable in this federal proceeding.

Even if Judge Badeaux should have been recused in the state post-conviction proceedings, *which is an issue this Court does not reach*, that would not affect the validity of petitioner's underlying conviction or sentence.  Therefore, federal habeas corpus relief could not be granted on that basis.  <u>See</u> <u>Duff-Smith v. Collins</u>, 973 F.2d 1175, 1182 (5th Cir. 1992) ("[I]nfirmities in state habeas proceedings do not constitute grounds for federal habeas relief.  We look only to the trial and direct appeal.") (footnote omitted); <u>see also</u> <u>Morris v. Cain</u>, 186 F.3d 581, 585 n.6 (5th Cir. 1999) ("[O]ur circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief."); <u>Nichols v. Scott</u>, 69 F.3d 1255, 1275 (5th Cir. 1995) ("[E]rrors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction.  An attack on a state habeas proceeding does not entitle a petitioner to habeas relief in

respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotation marks omitted); <u>Davis v. Cain</u>, Civ. Action No. 07-6389, 2008 WL 5191912, at *6 (E.D. La. Dec. 11, 2008); <u>Campbell v. Cain</u>, Civ. Action No. 06-3983, 2007 WL 2363149, at *2 n.23 (E.D. La. Aug. 15, 2007).

Sufficiency of the Evidence

Lastly, petitioner claims that there was insufficient evidence to support his conviction.  On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> [T]he defendant contends the trial court erred in declining to rule the evidence in its totality was insufficient to find the defendant guilty beyond a reasonable doubt and erred in declining to grant the motion for post-verdict judgment of acquittal and/or new trial.  He argues reasonable doubt was established by testimony at trial indicating M.N.'s hymen was intact and from changes in M.N.'s testimony concerning how many times she was raped.
>
> The standard for review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt.  In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that

- 53 -

the evidence tends to prove, in order to convict," every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. Where the key issue is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of misidentification. Positive identification by only one witness may be sufficient to support the defendant's conviction. **State v. Wright**, 98-0601, pp. 2-3 (La. App. 1st Cir. 2/19/99), 730 So.2d 485, 486-87, <u>writs denied</u>, 99-0802 (La. 10/29/99), 748 So.2d 1157, and **State ex rel. Wright v. State**, 2000-0895 (La. 11/17/00), 773 So.2d 732.

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. **Wright**, 98-0601 at p. 3, 730 So.2d at 487.

Prior to amendment by 2001 La. Acts, No. 301, § 1, La. R.S. 14:41 provided:

A. Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.

B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.

Prior to amendment by 2001 La. Acts, No. 301, § 1, La. R.S. 14:42, in pertinent part, provided:

– 54 –

A.   Aggravated rape is a rape committed ... where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

* * *

(4)  When the victim is under the age of twelve years.  Lack of knowledge of the victim's age shall not be a defense.

* * *

After a thorough review of the record, we are convinced the evidence presented herein, viewed in the light most favorable to the state, proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of aggravated rape and the defendant's identity as the perpetrator of that offense. The verdict rendered against the defendant indicates the jury accepted the testimony of the state witnesses who testified at trial and rejected the testimony of the defense witnesses who testified at trial.  As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness.  **State v. Johnson**, 99-0385, p. 9 (La. App. 1st Cir. 11/5/99), 745 So.2d 217, 223, <u>writ denied</u>, **State ex rel. Johnson v. State**, 2000-0829 (La. 11/13/00), 774 So.2d 971.  On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt.  **State v. Glynn**, 94-0332, p. 32 (La. App. 1st Cir. 4/7/95), 653 So.2d 1288, 1310, <u>writ denied</u>, 95-1153 (La. 10/6/95), 661 So.2d 464.

This assignment of error is without merit.

State v. Anthony, No. 2002-KA-0906, at pp. 9-11. (St. ct. rec.,
vol. 9 of 11)  The Louisiana Supreme Court likewise rejected the
claim without assigning additional reasons.  State v. Anthony, 853
So.2d 637 (La. 2003).

Because a sufficiency of the evidence claim presents a
mixed question of law and fact, this Court must defer to the state
court's decision rejecting petitioner's claim unless he shows that
the state court's decision "was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States." 28 U.S.C.
§2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL
195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th
Cir. 2000).  For the following reason, the Court finds that
petitioner has made no such showing.

The United States Fifth Circuit Court of Appeals has
noted that claims of insufficient evidence are to be analyzed
pursuant to the standard set forth in Jackson v. Virginia, 443 U.S.
307 (1979):

> In considering challenges to the
> sufficiency of evidence in habeas proceedings,
> "the relevant question is whether, after
> viewing the evidence in the light most
> favorable to the prosecution, any rational
> trier of fact could have found the essential
> elements of the crime beyond a reasonable
> doubt."

<u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Jackson</u>, 443 U.S. at 319).  "The <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  <u>Santellan</u>, 271 F.3d at 193 (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)) (emphasis added).  Moreover, Louisiana's circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be excluded does not apply in a federal habeas corpus proceedings; in these proceedings, *only* the <u>Jackson</u> standard need be satisfied, even if state law would impose a more demanding standard of proof.  <u>Foy v. Donnelly</u>, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); <u>Wade v. Cain</u>, Civ. Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008).

Having been found competent to testify, the victim here testified that she was penetrated by petitioner during vaginal intercourse at a time when she was under twelve years of age.  It is clear that a victim's testimony, standing alone, is sufficient to support a rape conviction.  <u>Peters v. Whitley</u>, 942 F.2d 937, 941-42 (5th Cir. 1991); <u>see also</u> <u>Fetterly v. Whitley</u>, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); <u>cf.</u> <u>Picou v. Cain</u>, Civ. Action No. 06-6258, 2007 WL 1521021, at *4-5 (E.D. La. May 22, 2007) (conviction of carnal knowledge of a juvenile).

Based on the foregoing, and viewing the evidence in the light most favorable to the prosecution, it is evident that any rational trier of fact could have found that the prosecution established the essential elements of aggravated rape beyond a reasonable doubt. See Peters, 942 F.2d at 942.

Accordingly, this Court finds that petitioner has failed to demonstrate that the state court's decision denying his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Therefore, applying the AEDPA's deferential standard, the Court likewise rejects the claim.

Cumulative Error

Out of an abundance of caution, the Court notes that petitioner argues in the concluding paragraph of the memorandum accompanying his application that, even if relief is not warranted based on his individual claims, he should be granted relief based on their cumulative effect. He is incorrect.

The United States Fifth Circuit Court of Appeals initially expressed its disfavor of such claims in federal habeas corpus proceedings. For example, in one case, the Fifth Circuit noted:

> [Petitioner] finally asserts that even if none of his claims entitles him to relief individually, all of them collectively, do.

– 58 –

> Habeas relief is available only where a prisoner is in custody in violation of the Constitution or of federal law. 28 U.S.C. § 2254. [Petitioner] cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero.

Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987).

Nevertheless, the Fifth Circuit subsequently recognized such claims, albeit in a strictly narrow set of circumstances. The Fifth Circuit has noted:

> In Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992), cert. denied, 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993), the en banc court recognized an independent claim based on cumulative error only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" Id., quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised. Derden, 978 F.2d at 1461.

Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996); see also Jackson v. Johnson, 194 F.3d 641, 655 (5th Cir. 1999) ("The

cumulative error doctrine provides relief only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness.").

In the instant case, the individual claims asserted by petitioner have no merit and, therefore, he is not entitled to relief merely by cumulating those claims, especially when, as here, the cumulative effect of the alleged errors cannot be said to have fatally infected the fundamental fairness of the trial.

**RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal habeas corpus relief filed by Joseph Anthony be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _25th_ day of _August_, 2009.

_____
**ALMA L. CHASEZ**
**UNITED STATES MAGISTRATE JUDGE**